**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| NEWTYN PARTNERS, LP and NEWTYN TE PARTNERS, LP, individually and on behalf of all others similarly situated, | **CASE NO:** |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| vs. | |
| ALLIANCE DATA SYSTEMS CORPORATION N/K/A BREAD FINANCIAL HOLDINGS, INC., CHARLES L. HORN, JOHN J. CHESNUT, and RALPH J. ANDRETTA, | **DEMAND FOR A JURY TRIAL** |
| Defendants. | |

Plaintiffs Newtyn Partners, LP and Newtyn TE Partners, LP (together "Plaintiff"), by and through counsel, allege the following upon information and belief, except as to allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief are based upon, among other things, its counsel's investigation, which includes, without limitation: (a) review and analysis of public filings made by Loyalty Ventures, Inc. ("Loyalty Ventures" or the "Company") and Alliance Data Systems Corporation ("ADS"), now known as Bread Financial Holdings, Inc., with the U.S. Securities and Exchange Commission (the "SEC"); (b) review and analysis of press releases and other publications disseminated by Defendants (defined below) and other parties; (c) review of news articles, shareholder communications, conference calls, and postings on Loyalty Ventures' and ADS's websites concerning Defendants' public statements; and (d) review of other publicly available information concerning the Company and the Individual Defendants.

## **NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of all persons and entities who purchased Loyalty Ventures common stock between November 8, 2021 and June 7, 2022, inclusive (the "Class Period"), against certain officers and executives of Loyalty Ventures, ADS, and the Chief Executive Officer ("CEO") of ADS (collectively "Defendants") seeking to pursue remedies under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*. (the "Exchange Act").

2. Loyalty Ventures, based in Dallas, Texas, was created as the result of a November 2021 spinoff from ADS in which Loyalty Ventures became an independent public company. Loyalty Ventures began trading as a public company on November 8, 2021 – the first day of the Class Period – on the Nasdaq Global Select Market (the "Nasdaq") under the ticker symbol "LYLT."

3.     As an independent company, Loyalty Ventures owns and operates the AIR MILES Reward Program ("Air Miles"), an end-to-end loyalty platform, and BrandLoyalty, a campaign-based loyalty program for grocers and other high-frequency retailers. Air Miles is Canada's most recognized loyalty program. The program's participating businesses ("Sponsors") pay a fee to the Company per reward mile issued, and in return, Air Miles provides all marketing, customer service, rewards, and redemption management. As Loyalty Ventures' CEO, Defendant Charles L. Horn ("Horn"), has explained, "[t]he value of a coalition loyalty program such as the AIR MILES Reward Program depends on the number and quality of participating sponsors." As a result, "[m]uch like an anchor tenant in a mall, [large Sponsors were] critical to the Air Miles Reward Program."

4.     Leading up to the spinoff, ADS issued false and misleading statements regarding Loyalty Ventures through, among other things, the preparation and filing of a registration statement on Form 10 with the SEC pursuant to the Exchange Act on September 1, 2021, and subsequent amendments thereto (the "Registration Statement," or "Form 10"), signed by Defendant Horn. Therein, ADS touted Loyalty Ventures' prospects as an independent company. Moreover, ADS warned investors of risks to Loyalty Ventures' business that ADS knew had already materialized, such as the potential "loss of, or reduction in demand for services from, significant clients."

5.     In addition, in the months leading up to the spinoff, ADS and its executives, including its CEO Defendant Ralph J. Andretta, made numerous positive statements about Loyalty Ventures being "well positioned for success" and about ADS being "optimistic about Loyalty Ventures' strong competitive profile."

6.     ADS also touted Loyalty Ventures' "highly attractive financial profile," and included reference to a number of customers of Loyalty Ventures as part of ADS's explanation that Loyalty Ventures' "exclusive relationships are point of differentiation" for the Company. Indeed, one of the customers listed was Sobeys Inc. ("Sobeys"), the second-largest supermarket chain in Canada, and the second-largest Sponsor in the Air Miles program.

7.     Unbeknownst to investors, however, Defendants were informed in late 2020 that Sobeys was considering exercising its early termination rights and renegotiating or discontinuing its participation in the Loyalty Ventures Air Miles program.  Indeed, as has now been revealed by Loyalty Ventures' CEO Defendant Horn, himself a former ADS executive, Defendants knew the pending departure of Sobeys would have a broader "network effect" on the value of the entire Air Miles Reward Program to the remaining Sponsors.  The loss of Sobeys as a Sponsor and anticipated "network effect," in conjunction with the debt load placed upon Loyalty Ventures as part of the spinoff, ultimately forced Loyalty Ventures into Chapter 11 bankruptcy.

8.     The truth was revealed before the markets opened on June 8, 2022, when Loyalty Ventures issued a press release announcing that "its AIR MILES® Reward Program segment and AIR MILES' Sponsor, Sobeys were unable to align on extension terms; consequently, on June 7, 2022, Sobeys provided notice of its intent to exit the program on a region-by-region basis."

9.     On this news, the share price of Loyalty Ventures common stock fell more than 45% from a closing price of $11.03 per share on June 7, 2022, to a closing price of $6.02 per share on June 8, 2022.

10.     Shortly after the Class Period, and just 15 months after Loyalty Ventures became a publicly traded company, on March 9, 2023, Loyalty Ventures filed for Chapter 11 Bankruptcy in

the United States Bankruptcy Court for the Southern District of Texas ("Texas Bankruptcy Court"). *See In re: Loyalty Ventures Inc.*, No. 4:23-bk-09111 (S.D. Tex.).

11. On March 10, 2023, CEO Horn filed a declaration in Texas Bankruptcy Court in support of Loyalty Ventures' bankruptcy petition (the "Horn Declaration"). The Horn Declaration contained numerous stunning admissions that confirm, among other things, that ***in late 2020*** Sobeys had informed ADS that it was considering exercising its early termination rights and renegotiating or discontinuing its participation with Loyalty Ventures. The Horn Declaration further confirmed Sobeys was "critical to the AIR MILES" program and that the "previously expected consequence" of the Sobeys' departure was a "network effect on the value of the entire" program. As a result, the Horn Declaration directly tied the loss of Sobeys as a Sponsor, the risk of which Defendants knew in late 2020 but failed to disclose to investors, to the Company's ultimate bankruptcy filing.

12. As a result of Defendants' wrongful acts and misleading statements, and the precipitous decline in the market value of the Company's shares, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

13. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, and Section 27 of the Exchange Act, (15 U.S.C. § 78aa).

15. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b), Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District, and many of the acts and omissions

charged herein, including the dissemination of materially false and misleading information to the investing public, and the omission of material information, occurred in substantial part in this Judicial District, as ADS is headquartered in this Judicial District.

16.     In connection with the acts, transactions, and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the U.S. Mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES AND RELEVANT NON-PARTIES

17.     Plaintiff funds are funds of investment management firm Newtyn Management, LLC, which is located in New York, New York.  As set forth in the accompanying certification, incorporated by reference herein, Plaintiff purchased Loyalty Ventures common stock during the Class Period and suffered damages as a result of the federal securities laws violations and false and/or misleading statements and/or material omissions alleged herein.

18.     Defendant ADS is incorporated under the laws of Delaware with its principal executive offices located in Columbus, Ohio.  At the start of the Class Period, ADS's shares traded during the Class Period on the New York Stock Exchange (the "NYSE") under the ticker symbol "ADS."  On March 23, 2022, ADS announced that it would now be known as Bread Financial Holdings, Inc. and would begin trading on the NYSE under the new ticker symbol "BFH" on April 4, 2022.

19.     Defendant Horn has served as Loyalty Ventures' CEO since November 2021.  Prior to joining the Company, Horn was an Executive Vice President ("EVP") and senior advisor at ADS, beginning in February 2020, where according to the Horn Declaration, Horn "worked on (i) the BrandLoyalty Business and AIR MILES Business," and "(ii) additional strategic initiatives."  Prior to that, Horn served as the acting CEO of ADS from November 2019 to February

2020, as an EVP and Vice Chairman from June 2019 to February 2020, and as the Chief Financial Officer ("CFO") of ADS from December 2009 to June 2019.

20. Defendant John J. Chesnut ("Chesnut") has served as Loyalty Ventures' CFO and EVP since November 2021. Prior to joining Loyalty Ventures, Chesnut served as ADS's Treasury & Corporate Development Vice President from October 2010 to May 2015, before serving as ADS's Senior Vice President and Treasurer from May 2015 until the spinoff in 2021.

21. Defendant Andretta has served as ADS's CEO since February 2020.

22. Defendants Horn, Chestnut, and Andretta (collectively, the "Individual Defendants"), because of their positions within Loyalty Ventures and/or ADS, possessed the power and authority to control the contents of, *inter alia*, Loyalty Ventures' and/or ADS's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. They were provided with copies of Loyalty Ventures' and/or ADS's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Defendant companies, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false and misleading statements pleaded herein.

23. ADS and the Individual Defendants are collectively referred to herein as "Defendants."

24.     Relevant Non-Party Loyalty Ventures is incorporated under the laws of Delaware with its principal executive offices located in Dallas, Texas.  On March 9, 2023, Loyalty Ventures filed for bankruptcy protection under Chapter 11 of the U.S. Bankruptcy Code.  For this reason, Loyalty Ventures is not named as a defendant.  As of December 2022, the Company employed approximately 1,204 individuals in 18 countries and provided services to over 300 participating businesses (representing nearly 9 million Canadian customers) in 41 countries worldwide through the Air Miles and BrandLoyalty Businesses.  The Company's shares currently trade over the counter under the ticker symbol "LYLTQ," after the Company filed a Form 25 with the SEC on March 20, 2023, delisting itself from the Nasdaq.

## SUBSTANTIVE ALLEGATIONS

### Background

25.     ADS is a financial services company that provides personalized payment, lending, and saving products and services.  Prior to the November 2021 spinoff, the businesses that would come to comprise Loyalty Ventures were ADS's pre-spin LoyaltyOne, Co. ("LoyaltyOne") and the BrandLoyalty business.  ADS had previously acquired LoyaltyOne in 1998 and had acquired BrandLoyalty over the course of a few years, between 2013 and 2016.  Following the spinoff, Loyalty Ventures was the ultimate parent of 45 subsidiaries world-wide that collectively own and operate two business segments: (1) Air Miles and (2) BrandLoyalty.

26.     Air Miles is a Canadian rewards program, with more than 11 million active accounts within approximately two-thirds of all Canadian households.  Air Miles members earn points on purchases at certain merchants that are redeemable with hundreds of rewards partners across Canada.  Air Miles is Canada's most recognized loyalty program.  The program's participating businesses, called Sponsors, pay a fee to the Company per Air Miles reward mile issued.  In return, the Air Miles program provides all marketing, customer service, rewards, and

redemption management services.  Prior to the spinoff, the Air Miles business accounted for 67%

of the pre-spin LoyaltyOne segment's adjusted EBITDA in 2019 and 77% in 2020.

27.     The remainder of Loyalty Ventures' business is the BrandLoyalty business, which

is a campaign-based loyalty program for grocers and other high-frequency retailers that provides

services in transactional and emotional loyalty, impacting consumer behavior through promotional

campaign-driven loyalty programs.

28.     As Defendant Horn explained after the Class Period, the Air Miles Business was

"subject to significant client concentration risk."  In fact, prior to the spinoff, Air Miles' top ten

participating Sponsors generated more than 90% of the reward miles issued under the program in

2019 and 2020.  In 2019 and 2020, the largest client – the Bank of Montreal ("BMO") – represented

12% and 15%, respectively of pre-spin LoyaltyOne segment's revenue.  Sobeys and Shell Canada

Products ("Shell Canada") were also top ten participating Sponsors.

29.     On May 12, 2021, ADS filed a Form 8-K with the SEC announcing its intention to

spin off its Air Miles and BrandLoyalty business by year-end 2021 into its own independent public

company.  In deciding to spin off rewards and loyalty business segments, ADS stated the

"separation [is] consistent with its strategic focus to be a leading payment and lending solutions

business."  As part of the spinoff announcement, ADS explained that the spinoff was "expected to

unlock growth potential for Loyalty Ventures as a standalone data-driven, tech-enabled global

loyalty solutions provider."  Additionally, Defendant Andretta stated that "We are confident that

this transaction, once completed, will provide distinct benefits to each company, enhancing the

businesses' ability to execute against their respective strategic priorities."

30.     The spinoff was to be executed through a "separation and distribution" agreement,

pursuant to which 81% of the outstanding shares of Loyalty Ventures were to be distributed pro

rata to the holders of ADS common stock. ADS retained the remaining 19% of the outstanding shares of Loyalty Ventures. In addition, Loyalty Ventures made cash distributions totaling $750 million to ADS. The $750 million cash distribution from Loyalty Ventures to ADS was composed of $650 million in proceeds in debt incurred by Loyalty Ventures along with $100 million of cash previously earned by the businesses' operating subsidiaries. Moreover, as detailed in the Horn Declaration, "ADS conditioned the [spinoff] on the Company's entry into a Credit Agreement, which severely strained the Company's available cash flows. ADS also required [Loyalty Ventures] to absorb $25 million of the debt issuance and other transaction costs associated with the [spinoff]."

### Defendants' False and Misleading Statements

31.     In order to complete the Loyalty Ventures spinoff, ADS participated in the preparation and filing of a Form 10, which registered the Loyalty Venture shares. The Registration Statement, signed by Defendant Horn, represented to future Loyalty Ventures investors that the "loss of, or reduction in demand for services from, significant clients" could have an adverse impact on the Company, and further stated that the "loss of sponsors" such as Sobeys posed a risk to the Company's business strategy. The Registration Statement further stated that Loyalty Ventures' "ten largest clients represented over half of our combined revenue in 2020" and that any "loss of sponsors . . . may limit both our growth and profitability."

32.     On September 29, 2021, ADS filed a Current Report on Form 8-K with the SEC providing an update on the status of the spinoff. The Form 8-K update highlighted that ADS was "optimistic about Loyalty Ventures' strong competitive profile with an outlook that capitalizes on the macro recovery from the pandemic and positions the company to pursue strategic initiatives in both existing and new markets."

33.     On October 13, 2021, ADS announced that its board of directors had approved the spinoff of Loyalty Ventures into an independent, publicly traded company, with an anticipated first trading day of November 8, 2021.  As part of the spinoff, on November 5, 2021, ADS shareholders were to receive one share of Loyalty Ventures common stock for every two and one-half shares of ADS common stock held at the close of business on the record date of October 27, 2021.  Notably, shareholders of ADS did not have a right to vote on the spinoff—leaving it up to the sole decision of ADS's board of directors.

34.     Furthermore, on October 14, 2021, ADS filed a Form 8-K with the SEC that attached a slide show titled "Loyalty Ventures Overview."  The slide show touted Loyalty Ventures' "highly attractive financial profile," and included references to several customers, including Sobeys.  After referencing certain Loyalty Ventures customers, the slide show stated that Loyalty Ventures' "exclusive relationships are point of differentiation" and that the Company had a "long runway for growth."

35.     On October 28, 2021, ADS issued a press release reporting its financial results for the third quarter of 2021, including the performance of its LoyaltyOne segment, which would become Loyalty Ventures following the spinoff.  In the press release, Defendant Andretta highlighted LoyaltyOne's "positive momentum building [] as campaign activity picked up late in the quarter for BrandLoyalty, and [that] AIR MILES reward miles redeemed improved to the highest level since the pandemic began."  Defendant Andretta also stated that the spinoff was "expected to provide a significant improvement in [ADS]'s capital metrics.  Loyalty Ventures will have the opportunity to focus on its own unique strategic priorities and make meaningful investments to drive growth and efficiencies.  We are excited about the prospects for both businesses and the long-term potential of each of the companies."

36.     On the same day, Loyalty Ventures also issued a press release that quoted the above excerpts from ADS's press release.

37.     Also on the same day, on ADS's earnings conference call, Defendant Andretta assured investors that Loyalty Ventures "is well positioned for success with a strong management team transitioning to lead [it]." Defendant Andretta also stated, "We are optimistic on the long-term outlook as travel rebounds and are excited about the relaunch and rebrand of AIR MILES in October."

38.     On Friday, November 5, 2021, after the close of markets, the spinoff was completed. On Monday, November 8, 2021, Loyalty Ventures began trading as an independent public company after being spun off from ADS. In a press release issued by Loyalty Ventures announcing the completion of the spinoff from ADS, Defendant Horn, Loyalty Ventures' new CEO, stated:

> Loyalty Ventures' dedicated and passionate team will leverage our extensive loyalty expertise towards transforming the shopping experience in markets around the world, while making a positive difference in the lives of consumers. With our market-leading positions, strong free cash flow profile and commitment to new investments in growth, we are confident we will create and enhance value for all our stakeholders.

39.     Similarly, in ADS's press release issued that same day, Defendant Andretta stated that "Loyalty Ventures has a solid management team and business strategy in place, and as both businesses move forward independently, I am confident that each is well positioned for future success."

40.     On November 24, 2021, Loyalty Ventures filed with the SEC its first Quarterly Report on Form 10-Q for the period ending September 30, 2021 ("3Q2021 Form 10-Q"). In the section titled "Risk Factors," the 3Q2021 Form 10-Q stated only that there "have been no material

changes to the Risk Factors previously disclosed in our registration statement on Form 10, filed with the SEC on October 13, 2021."  Attached to Loyalty Ventures' 3Q2021 Form 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Horn and Chesnut attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting, and the disclosure of all fraud.

41.    On December 15, 2021, Loyalty Ventures filed a Form 8-K with the SEC that attached an investor presentation slide show.  The slide show contained the same information as described in ADS's October 14, 2021 slide show discussed above in ¶ 34.

42.    On February 3, 2022, Loyalty Ventures held an earnings conference call with analysts after releasing its financial results for the Company's fourth quarter of 2021.  During the call, Defendant Horn highlighted the recent spinoff, stating that "We have brought two established data-driven loyalty solution providers to the market, [b]oth of which share key investment strengths, namely [they're] leaders in the respective businesses, have long-standing customer relationships and combined generate very strong cash flow.  These are the attributes that we intend to build upon in the coming years."

43.    Then, on February 28, 2022, the Company filed its Annual Report Form 10-K with the SEC, which included near identical risk warnings as those made in the Registration Statement and described above in ¶¶ 4, 31, including an increase in the Company's "ten largest clients," which now "represented 58% of our consolidated and combined revenue in 2021."  Attached to the Company's Form 10-K were certifications pursuant to the SOX signed by Defendants Horn and Chesnut attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

44. The statements referenced in ¶¶ 31 - 43 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects to make the statements made, in light of the circumstances under which they were made, not false and misleading.

45. Specifically, Defendants misrepresented and/or failed to disclose to investors that: (1) the Air Miles program suffered from a lack of investment prior to the spinoff; (2) as a result, Sobeys, one of Loyalty Ventures' largest customers, had informed Defendants it was considering exercising its early termination rights; (3) the threat of Sobeys' departure loomed throughout 2021 including in the timeframe leading up to the spinoff; (4) Defendants expected the departure of any single large Sponsor, such as Sobeys, would have "network effect" on the value of the entire Air Miles program; (5) the high leverage and debt service obligations foisted upon Loyalty Ventures, in conjunction with the "network effect" impact on the value of the Air Miles business, threatened the Company's ability to continue operations; and (6) as a result, Defendants' positive statements about the Company's financial guidance, business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

**The Truth Is Revealed**

46. On June 8, 2022, before the markets opened, Loyalty Ventures filed a Form 8-K with the SEC that contained a press release that provided updates on the Company's Air Miles Reward Program Business. The press release revealed that the Company and Air Miles Sponsor Sobeys "were unable to align on extension terms," and "consequently, Sobeys provided notice of its intent to exit the program on a region-by-region basis, beginning with Atlantic Canada, between August and the first quarter of 2023." The press release also noted Loyalty Ventures:

> expects that the primary impact of this development in 2022 will be
> on the number of AIR MILES reward miles issued, as Sobeys

represented approximately 10% of Loyalty Ventures' adjusted EBITDA in 2021.  Given the uncertainty related to the timing of the transition of Sobeys' additional regions and the currency and program timing issues often associated with its BrandLoyalty business, Loyalty Ventures will re-evaluate its 2022 revenue and EBITDA guidance when there is more clarity[.]

47.     As the market digested the news that Sobeys, which Defendant Horn later compared to an "anchor tenant," would be leaving the Air Miles program, the price of Loyalty Ventures shares fell over 45% to close at $6.02 per share on June 8, 2022 – a decline of $5.01 per share from Loyalty Ventures' closing price of $11.03 on June 7, 2022.

48.     Analysts at Morgan Stanley stated that "the loss of Sobeys increases the risk profile and adds uncertainty to the stability of the AIR MILES program," calling it a "negative development," particularly as Sobeys was leaving to join a competing loyalty program, created by Sobeys' parent company.  The analysts also cautioned that "the network effect loss on the loyalty program from losing one of the top grocery chains in Canada leads to increased risk to [Loyalty Ventures] as other sponsors could also choose to defect."  In a similar sentiment, analysts at Sidoti & Company noted the "loss of Sobeys will impact near-term result," and "investors are likely to be concerned that other relationships may prove to be at risk."  Furthermore, Ricky Zhang, founder of Prince of Travel, a website that tracks and compares travel reward systems in Canada, said that losing Sobeys from Air Miles "is very much a major blow, and it's only the latest in a series of major blows that [Air Miles] suffered in recent years."  For Zhang, calling this latest issue "the final nail in the coffin could be a little dramatic, but it wouldn't be too far off."

49.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and the other Class members have suffered significant losses and damages.

**Post-Class Period Events**

50.     On March 9, 2023, Loyalty Ventures reported that it was filing for Chapter 11 Bankruptcy.  In a Form 8-K filed with the SEC on March 10, 2023, the Company announced that it had filed a petition in Texas Bankruptcy Court.

51.     The Horn Declaration was filed in support of the Loyalty Ventures Chapter 11 petition and first day motions.  The Horn Declaration contained a number of stunning admissions previously undisclosed to investors.  Specifically, CEO Horn swore under penalty of perjury that the Loyalty Ventures Air Miles' business:

> in particular, suffered from a lack of investment prior to the [spinoff], something that major Sponsors observed and sought to leverage.  Specifically, in late 2020, Sobeys informed ADS that it was considering exercising its early termination rights and renegotiating or discontinuing its participation in the Air Miles Rewards Program before the expiration of its contract.  The threat of Sobeys's departure or re-pricing loomed throughout 2021 in the leadup to the [spinoff].

52.     The Horn Declaration makes clear that the known risk of Sobeys' departure, resulting from the undisclosed "lack of investment" prior to the spinoff, extended beyond just "the direct impact from the loss of revenue and earnings attributable to the loss of Sobeys."  As Defendant Horn explained, the "departure of one [Sponsor] would have a broader *'network effect' on the value of the entire Air Miles Reward Program* to the remaining Sponsors."  Indeed, "[t]he value of a coalition loyalty program . . . depends on the number and quality of participating sponsors."  "Much like an anchor tenant in a mall, *Sobeys was critical* to the Air Miles Reward Program . . . ."

53.     Remarkably, the Horn Declaration acknowledges that "Sobeys'[] departure had the *previously expected* consequence of causing the remaining two of the Air Miles Reward Program's top three customers (BMO and Shell Canada) to demand and obtain substantial price concessions

. . . ."  The Horn Declaration then directly ties the "loss of Sobeys as a Sponsor" to the Loyalty Ventures bankruptcy, explaining that the Sobeys departure resulted in the Company's debt service obligations being "more than the cash flow being generated."

## CLASS ACTION ALLEGATIONS

54.    Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of all persons and entities that purchased Loyalty Ventures shares between November 8, 2021 and June 7, 2022, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers, and directors of the Company and ADS, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

55.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Throughout the Class Period, Loyalty Ventures shares actively traded under the symbol "LYLT."  Millions of Loyalty Ventures shares were traded publicly during the Class Period on the Nasdaq.  As of October 27, 2022, the Company had more than 24 million shares outstanding.  Record owners and other members of the Class may be identified from records maintained by Loyalty Ventures or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

56.    Plaintiff's claims are typical of the claims of the other members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests that conflict with those of the Class.

58. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants violated the Exchange Act by the acts and omissions as alleged herein;

(b) whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(c) whether documents, press releases, and other statements disseminated to the investing public and the Company's shareholders misrepresented material facts about the business, operations, and prospects of Loyalty Ventures and/or ADS;

(d) whether statements made by Defendants to the investing public misrepresented and/or omitted to disclose material facts about the business, operations, and prospects of Loyalty Ventures and/or ADS;

(e) whether the market price of Loyalty Ventures shares during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

(f) the extent to which the members of the Class have sustained damages and the proper measure of damages.

59. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the

damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this suit as a class action.

### UNDISCLOSED ADVERSE INFORMATION

60.    The market for Loyalty Ventures shares was an open, well-developed, and efficient market at all relevant times.  As a result of the materially false and/or misleading statements and/or omissions particularized in this Complaint, Loyalty Ventures' shares traded at artificially inflated prices during the Class Period.  Plaintiff and the other members of the Class purchased Loyalty Ventures' shares relying upon the integrity of the market price of the Company's common stock and market information relating to Loyalty Ventures and have been damaged thereby.

61.    Defendants materially misled the investing public, thereby inflating the price of Loyalty Ventures shares, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Loyalty Ventures' and/or ADS's business, operations, and prospects as alleged herein.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its business and/or ADS and its business, thus causing the Company's common stock to be overvalued and artificially inflated or maintained at all relevant times.  Defendants' materially false and/or misleading statements directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class who purchased the Company's common stock at artificially inflated prices and were harmed when the truth was revealed.

## SCIENTER ALLEGATIONS

62.     As alleged herein, Defendants acted with scienter in that Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company and/or ADS were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

63.     As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Loyalty Ventures and/or ADS, their control over, receipt, and/or modification of Loyalty Ventures' and ADS's allegedly materially misleading statements and omissions, and/or their positions with the Company, which made them privy to confidential information concerning Loyalty Ventures, participated in the fraudulent scheme alleged herein.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

64.     As a result of their purchases of Loyalty Ventures' shares during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

65.     In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Loyalty Ventures and/or ADS who knew that the statement was false when made.

19

**LOSS CAUSATION**

66.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss, *i.e.*, damages, suffered by Plaintiff and the Class.

67.     As detailed herein, Defendants made materially false and misleading statements and omissions and engaged in a scheme to deceive the market.  This artificially inflated the prices of Loyalty Ventures shares and operated as a fraud or deceit on the Class.  When Defendants' prior misrepresentations, information alleged to have been concealed, fraudulent conduct, and/or the effect thereof were disclosed to the market, the price of Loyalty Ventures' shares fell precipitously, as the prior artificial inflation came out of the price.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**
**(FRAUD-ON-THE-MARKET DOCTRINE)**

68.     The market for Loyalty Ventures shares was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose particularized in this Complaint, Loyalty Ventures shares traded at artificially inflated and/or maintained prices during the Class Period.  Plaintiff and other members of the Class purchased the Company's shares relying upon the integrity of the market price of Loyalty Ventures shares and market information relating to Loyalty Ventures and have been damaged thereby.

69.     At all times relevant, the market for Loyalty Ventures shares was an efficient market for the following reasons, among others:

(a)     Loyalty Ventures was listed and actively traded on the Nasdaq, a highly efficient and automated market;

(b)     As a regulated issuer, Loyalty Ventures filed periodic public reports with the SEC and/or the Nasdaq;

(c)     Loyalty Ventures regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Loyalty Ventures was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

70.    As a result of the foregoing, the market for Loyalty Ventures shares promptly digested current information regarding Loyalty Ventures from all publicly available sources and reflected such information in Loyalty Ventures' share price.  Under these circumstances, all purchasers of Loyalty Ventures shares during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices, and a presumption of reliance applies.

71.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded in Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's and/or ADS's business, operations, and prospects— information that Defendants were obligated to disclose but did not—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of investment

decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNTS AGAINST DEFENDANTS

## COUNT I

### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

72.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

73.    Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Loyalty Ventures shares; and (iii) cause Plaintiff and other members of the Class to purchase Loyalty Ventures shares at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

74.    Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct that operated as a fraud and deceit upon the purchasers of the Company's shares in an effort to maintain artificially high market prices for Loyalty Ventures shares in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

75.    Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about Loyalty Ventures'
and/or ADS's business, operations, and prospects, as specified herein. Defendants employed
devices, schemes, and artifices to defraud, while in possession of material adverse non-public
information and engaged in acts, practices, and a course of conduct as alleged herein in an effort
to assure investors of Loyalty Ventures' and/or ADS's business, operations, and prospects, which
included the making of, or the participation in the making of, untrue statements of material facts
and/or omitting to state material facts necessary in order to make the statements made about
Loyalty Ventures and/or ADS and its business, operations, and future prospects in light of the
circumstances under which they were made, not misleading, as set forth more particularly herein,
and engaged in transactions, practices, and a course of conduct of business that operated as a fraud
and deceit upon the purchasers of the Company's common stock during the Class Period.

76.     Each of the Individual Defendants' primary liability and controlling person
liability, arises from the following facts: (i) each of the Individual Defendants was a high-level
executive and/or director at the Company and/or ADS and a member of the Company's
management team or ADS's management team or had control thereof; (ii) each of the Individual
Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of
the Company and/or ADS, was privy to and participated in the creation, development, and
reporting of the Company's and/or ADS's business, operations, and prospects; (iii) each of the
Individual Defendants enjoyed significant personal contact and familiarity with the other
Defendants and was advised of and had access to, other members of the Company's and/or ADS's
management team, internal reports, and other data and information about the Company's and/or
ADS's financial condition and performance at all relevant times; and (iv) each of the Individual
Defendants was aware of the Company's and/or ADS's dissemination of information to the

investing public, which they knew and/or recklessly disregarded was materially false and misleading.

77.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Loyalty Ventures' and/or ADS's operating condition, business practices, and prospects from the investing public and supporting the artificially inflated and/or maintained price of its common stock.  As demonstrated by Defendants' overstatements and misstatements of the Company's and/or ADS's business, operations, and prospects, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

78.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Loyalty Ventures shares was artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants or upon the integrity of the market in which the stock trades, and/or in the absence of material adverse information that was known or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants, Plaintiff and the other members of the Class purchased Loyalty Ventures shares during the Class Period at artificially inflated prices and were damaged thereby.

79.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff and the other

members of the Class and the marketplace known of the truth regarding the problems that Loyalty Ventures was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased their Loyalty Ventures shares, or, if they had purchased such shares during the Class Period, they would not have done so at the artificially inflated prices that they paid.

80.     By virtue of the foregoing, Defendants each violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

81.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

<u>**COUNT II**</u>

**For Violations of Section 20(a) of the Exchange Act**
**Against All Individual Defendants and ADS**

82.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

83.     The Individual Defendants acted as controlling persons of Loyalty Ventures and/or ADS within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions with the Company and/or ADS, participation in, and/or awareness of the Company's and/or ADS's operations, and intimate knowledge of the false statements filed by the Company and/or ADS with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company and/or ADS, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  Each of the Individual Defendants was provided with or had unlimited access to copies of the Company's

and/or ADS's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84. In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and/or ADS and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

85. ADS effectuated the spinoff and was a control person of the Company. Prior to and at the time of the spinoff, ADS was in direct control of the operation and management of LoyaltyOne as its parent organization. Furthermore, several officers and directors of Loyalty Ventures are current and/or former officers and directors of ADS. ADS had the requisite power to directly or indirectly control or influence the specific corporate policies that resulted in the unlawful acts and conduct alleged in Count I with respect to the false and misleading statements issued by ADS and its executives. By virtue of ADS's controlling position, ADS is liable pursuant to Section 20(a) of the Exchange Act.

86. As set forth above, Defendants each violated § 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, the Individual Defendants and ADS are liable pursuant to § 20(a) of the Exchange Act. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's shares during the Class Period.

## **PRAYER FOR RELIEF**

87. WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

(a)  Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(b)  Awarding Plaintiff and the other members of the Class damages in an amount that may be proven at trial, together with interest thereon;

(c)  Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs; and

(d)  Awarding such other relief as this Court deems appropriate.

## JURY DEMAND

88.  Plaintiff demands a trial by jury.

Dated: April 27, 2023                     Respectfully submitted,

By: */s/ John C. Camillus*
John C. Camillus (OH Bar No. 77435)

**LAW OFFICES OF JOHN C. CAMILLUS, LLC**
P.O. Box 141410
Columbus, OH 43214
Tel.: (614) 992-1000
Fax: (614) 559-6731
jcamillus@camilluslaw.com

*Local Counsel for Plaintiff Newtyn Partners, LP*
*and Newtyn TE Partners, LP*

**SAXENA WHITE P.A.**
David J. Schwartz (*pro hac vice forthcoming*)
Rachel A. Avan (*pro hac vice forthcoming*)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
dschwartz@saxenawhite.com
ravan@saxenawhite.com

*Counsel for Plaintiff Newtyn Partners, LP*
*and Newtyn TE Partners, LP*

## <u>CERTIFICATION AND AUTHORIZATION</u>

I, Noah Levy, am Portfolio Manager and Managing Member of Newtyn Management, LLC, and hereby certify, as to the claims asserted under the federal securities laws, as follows:

1.    In my capacity as Portfolio Manager and Managing Member of Newtyn Management, LLC, I am personally authorized to enter into and execute this certification on behalf of Newtyn Partners, LP and Newtyn TE Partners, LP (together, "Newtyn").

2.    I have reviewed a complaint alleging violations of the federal securities laws and authorized its filing.

3.    Newtyn did not purchase the securities that are the subject of this action at the direction of counsel, or in order to participate in any action arising under the federal securities laws.

4.    Newtyn is willing to serve as a lead plaintiff and representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

5.    Newtyn's transactions in Loyalty Ventures Inc.'s common stock during the Class Period are set forth in the attached Schedule A.

6.    Newtyn has not sought to serve as lead plaintiff and/or representative party on behalf of a class in any action under the federal securities laws filed during the three-year period preceding the date of this Certification.

7.    Newtyn will not accept any payment for serving as a representative party on behalf of the Class beyond Newtyn's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 2 4 day of April, 2023.

Noah Levy
*Portfolio Manager and Managing Member of*
*Newtyn Management, LLC*
*Authorized Signatory for Newtyn Partners, LP and*
*Newtyn TE Partners, LP*

1

## SCHEDULE A
### Transactions in Loyalty Ventures Inc.

| Newtyn Partners, LP | | |
|---|---|---|

| Common Stock Purchases | | | | Common Stock Sales | | |
|---|---|---|---|---|---|---|
| **Date** | **Shares** | **Price** | | **Date** | **Shares** | **Price** |
| 11/08/21 | 29,650 | $41.06 | | 12/16/21 | 8,895 | $28.61 |
| 11/10/21 | 29,650 | $37.35 | | 12/17/21 | 20,755 | $28.92 |
| 11/11/21 | 29,650 | $34.55 | | 01/06/22 | 8,159 | $32.47 |
| 11/12/21 | 17,556 | $35.15 | | 01/07/22 | 59 | $31.99 |
| 11/15/21 | 8,262 | $32.60 | | 01/13/22 | 7,720 | $32.14 |
| 11/16/21 | 4,261 | $32.05 | | 01/14/22 | 1,665 | $32.08 |
| 11/17/21 | 178 | $32.04 | | 01/18/22 | 13,701 | $31.51 |
| 11/23/21 | 59 | $32.11 | | 01/19/22 | 9,674 | $30.33 |
| 11/24/21 | 447 | $32.08 | | 01/20/22 | 11,411 | $30.89 |
| 11/26/21 | 9,130 | $30.17 | | 01/21/22 | 20,539 | $31.77 |
| 11/29/21 | 21,097 | $30.12 | | 01/24/22 | 38,355 | $32.57 |
| 11/30/21 | 15,416 | $29.32 | | 01/25/22 | 20,202 | $31.91 |
| 12/01/21 | 28,053 | $29.00 | | 01/26/22 | 16,676 | $30.98 |
| 12/02/21 | 29,793 | $30.04 | | 01/27/22 | 13,211 | $30.03 |
| 12/03/21 | 13,998 | $29.35 | | 01/28/22 | 16,180 | $29.13 |
| 12/06/21 | 2,385 | $30.01 | | 01/31/22 | 23,769 | $29.83 |
| 12/09/21 | 830 | $29.99 | | 02/01/22 | 3,004 | $29.16 |
| 12/10/21 | 10,400 | $29.20 | | 02/02/22 | 26,630 | $27.30 |
| 12/13/21 | 19,497 | $29.28 | | 02/03/22 | 17,331 | $27.13 |
| 12/14/21 | 22,476 | $29.39 | | | | |
| 12/15/21 | 3,711 | $28.38 | | | | |
| 02/04/22 | 8,453 | $23.93 | | | | |
| 02/07/22 | 9,570 | $23.96 | | | | |
| 02/08/22 | 1,616 | $23.98 | | | | |
| 02/09/22 | 7,729 | $25.86 | | | | |
| 02/10/22 | 10,735 | $25.99 | | | | |
| 02/11/22 | 1,035 | $25.50 | | | | |
| 02/22/22 | 1,904 | $23.96 | | | | |
| 02/24/22 | 6,000 | $23.80 | | | | |
| 02/25/22 | 1,146 | $23.96 | | | | |
| 02/28/22 | 7,004 | $23.88 | | | | |
| 03/01/22 | 16,497 | $22.57 | | | | |
| 03/02/22 | 11,406 | $21.98 | | | | |
| 03/03/22 | 13,311 | $20.92 | | | | |
| 03/04/22 | 9,628 | $19.33 | | | | |
| 03/07/22 | 9,842 | $18.59 | | | | |

| Common Stock Purchases | | | Common Stock Sales | | |
|---|---|---|---|---|---|
| **Date** | **Shares** | **Price** | **Date** | **Shares** | **Price** |
| 03/08/22 | 9,176 | $17.78 | | | |
| 03/09/22 | 15,096 | $18.93 | | | |
| 03/10/22 | 7,863 | $18.82 | | | |
| 03/11/22 | 12,386 | $18.87 | | | |
| 03/14/22 | 11,608 | $19.12 | | | |
| 03/15/22 | 9,222 | $19.11 | | | |
| 03/16/22 | 5,914 | $19.69 | | | |
| 03/17/22 | 9,083 | $19.07 | | | |
| 03/18/22 | 14,382 | $19.35 | | | |
| 03/21/22 | 14,842 | $19.49 | | | |
| 03/22/22 | 9,098 | $19.39 | | | |
| 03/23/22 | 11,707 | $18.45 | | | |
| 03/24/22 | 6,887 | $18.27 | | | |
| 03/25/22 | 9,943 | $17.56 | | | |
| 03/28/22 | 11,938 | $17.03 | | | |
| 03/29/22 | 12,492 | $17.95 | | | |
| 03/30/22 | 12,087 | $17.34 | | | |
| 03/31/22 | 10,191 | $16.75 | | | |
| 04/01/22 | 15,015 | $16.28 | | | |
| 04/04/22 | 11,420 | $16.65 | | | |
| 04/05/22 | 17,130 | $16.17 | | | |
| 04/06/22 | 12,870 | $15.68 | | | |
| 04/07/22 | 10,289 | $15.27 | | | |
| 04/08/22 | 5,441 | $15.72 | | | |
| 04/12/22 | 599 | $15.01 | | | |
| 04/13/22 | 172 | $15.02 | | | |
| 04/14/22 | 460 | $15.02 | | | |
| 04/18/22 | 6,440 | $14.94 | | | |
| 04/19/22 | 57 | $14.97 | | | |
| 04/21/22 | 3,153 | $14.99 | | | |
| 04/22/22 | 3,001 | $14.96 | | | |
| 04/25/22 | 1,362 | $15.01 | | | |
| 04/26/22 | 5,838 | $14.87 | | | |
| 04/27/22 | 7,215 | $14.26 | | | |
| 04/28/22 | 28,903 | $14.52 | | | |
| 04/29/22 | 28,600 | $13.18 | | | |
| 04/29/22 | 12,708 | $12.85 | | | |
| 05/02/22 | 15,892 | $11.92 | | | |
| 05/03/22 | 21,291 | $10.78 | | | |
| 05/04/22 | 7,309 | $10.87 | | | |
| 05/05/22 | 18,354 | $10.22 | | | |

| Common Stock Purchases | | |
|---|---|---|
| **Date** | **Shares** | **Price** |
| 05/06/22 | 7,923 | $10.52 |
| 05/09/22 | 2,323 | $9.99 |

| Common Stock Sales | | |
|---|---|---|
| **Date** | **Shares** | **Price** |

| Newtyn TE Partners, LP | | |
|---|---|---|

| Common Stock Purchases | | |
|---|---|---|
| Date | Shares | Price |
| 11/08/21 | 20,350 | $41.06 |
| 11/10/21 | 20,350 | $37.35 |
| 11/11/21 | 20,350 | $34.55 |
| 11/12/21 | 12,049 | $35.15 |
| 11/15/21 | 5,670 | $32.60 |
| 11/16/21 | 2,925 | $32.05 |
| 11/17/21 | 122 | $32.04 |
| 11/23/21 | 41 | $32.11 |
| 11/24/21 | 307 | $32.08 |
| 11/26/21 | 6,267 | $30.17 |
| 11/29/21 | 14,480 | $30.12 |
| 11/30/21 | 10,580 | $29.32 |
| 12/01/21 | 19,254 | $29.00 |
| 12/02/21 | 20,448 | $30.04 |
| 12/03/21 | 9,607 | $29.35 |
| 12/06/21 | 1,637 | $30.01 |
| 12/09/21 | 570 | $29.99 |
| 12/10/21 | 7,138 | $29.20 |
| 12/13/21 | 13,382 | $29.28 |
| 12/14/21 | 15,427 | $29.39 |
| 12/15/21 | 2,547 | $28.38 |
| 02/04/22 | 6,197 | $23.93 |
| 02/07/22 | 7,016 | $23.96 |
| 02/08/22 | 1,184 | $23.98 |
| 02/09/22 | 5,666 | $25.86 |
| 02/10/22 | 7,870 | $25.99 |
| 02/11/22 | 758 | $25.50 |
| 02/22/22 | 1,396 | $23.96 |
| 02/24/22 | 4,398 | $23.80 |
| 02/25/22 | 840 | $23.96 |
| 02/28/22 | 5,134 | $23.88 |
| 03/01/22 | 12,395 | $22.57 |
| 03/02/22 | 8,569 | $21.98 |
| 03/03/22 | 10,000 | $20.92 |
| 03/04/22 | 7,234 | $19.33 |
| 03/07/22 | 7,395 | $18.59 |
| 03/08/22 | 6,894 | $17.78 |
| 03/09/22 | 11,341 | $18.93 |
| 03/10/22 | 5,908 | $18.82 |

| Common Stock Sales | | |
|---|---|---|
| Date | Shares | Price |
| 12/16/21 | 6,105 | $28.61 |
| 12/17/21 | 14,245 | $28.92 |
| 01/06/22 | 5,577 | $32.47 |
| 01/07/22 | 41 | $31.99 |
| 01/13/22 | 5,277 | $32.14 |
| 01/14/22 | 1,138 | $32.08 |
| 01/18/22 | 9,365 | $31.51 |
| 01/19/22 | 6,613 | $30.33 |
| 01/20/22 | 7,800 | $30.89 |
| 01/21/22 | 14,038 | $31.77 |
| 01/24/22 | 26,216 | $32.57 |
| 01/25/22 | 13,808 | $31.91 |
| 01/26/22 | 6,267 | $30.98 |
| 01/27/22 | 9,685 | $30.03 |
| 01/28/22 | 11,862 | $29.13 |
| 01/31/22 | 17,426 | $29.83 |
| 02/01/22 | 2,203 | $29.16 |
| 02/02/22 | 19,522 | $27.30 |
| 02/03/22 | 12,705 | $27.13 |

| Common Stock Purchases | | | | Common Stock Sales | | |
|---|---|---|---|---|---|---|
| Date | Shares | Price | | Date | Shares | Price |
| 03/11/22 | 9,305 | $18.87 | | | | |
| 03/14/22 | 8,721 | $19.12 | | | | |
| 03/15/22 | 6,929 | $19.11 | | | | |
| 03/16/22 | 4,443 | $19.69 | | | | |
| 03/17/22 | 6,824 | $19.07 | | | | |
| 03/18/22 | 10,806 | $19.35 | | | | |
| 03/21/22 | 11,151 | $19.49 | | | | |
| 03/22/22 | 6,836 | $19.39 | | | | |
| 03/23/22 | 8,796 | $18.45 | | | | |
| 03/24/22 | 5,174 | $18.27 | | | | |
| 03/25/22 | 7,470 | $17.56 | | | | |
| 03/28/22 | 8,969 | $17.03 | | | | |
| 03/29/22 | 9,385 | $17.95 | | | | |
| 03/30/22 | 9,082 | $17.34 | | | | |
| 03/31/22 | 7,656 | $16.75 | | | | |
| 04/01/22 | 11,281 | $16.28 | | | | |
| 04/04/22 | 8,580 | $16.65 | | | | |
| 04/05/22 | 12,870 | $16.17 | | | | |
| 04/06/22 | 9,630 | $15.68 | | | | |
| 04/07/22 | 7,699 | $15.27 | | | | |
| 04/08/22 | 4,071 | $15.72 | | | | |
| 04/12/22 | 449 | $15.01 | | | | |
| 04/13/22 | 128 | $15.02 | | | | |
| 04/14/22 | 344 | $15.02 | | | | |
| 04/18/22 | 4,818 | $14.94 | | | | |
| 04/19/22 | 43 | $14.97 | | | | |
| 04/21/22 | 2,359 | $14.99 | | | | |
| 04/22/22 | 2,246 | $14.96 | | | | |
| 04/25/22 | 1,019 | $15.01 | | | | |
| 04/26/22 | 4,368 | $14.87 | | | | |
| 04/27/22 | 5,399 | $14.26 | | | | |
| 04/28/22 | 21,627 | $14.52 | | | | |
| 04/29/22 | 21,400 | $13.18 | | | | |
| 04/29/22 | 9,509 | $12.85 | | | | |
| 05/02/22 | 11,891 | $11.92 | | | | |
| 05/03/22 | 15,931 | $10.78 | | | | |
| 05/04/22 | 5,469 | $10.87 | | | | |
| 05/05/22 | 13,734 | $10.22 | | | | |
| 05/06/22 | 5,928 | $10.52 | | | | |
| 05/09/22 | 1,738 | $9.99 | | | | |