**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| NEWTYN PARTNERS, LP and NEWTYN TE PARTNERS, LP, individually and on behalf of all others similarly situated, | Case No. 2:23-cv-1451-EAS-EPD |
| Plaintiff, | Hon. Edmund A. Sargus, Jr. District Judge |
| vs. | |
| ALLIANCE DATA SYSTEMS CORPORATION N/K/A BREAD FINANCIAL HOLDINGS, INC., CHARLES L. HORN, JOHN J. CHESNUT, and RALPH J. ANDRETTA, | Hon. Elizabeth Preston Deavers Magistrate Judge |
| Defendants. | |

**DEFENDANTS ALLIANCE DATA SYSTEMS CORPORATION**
**AND RALPH J. ANDRETTA'S REPLY IN SUPPORT OF THEIR**
**MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

i

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ...................................................................................................................... 3

    I.   PLAINTIFF DOES NOT PLEAD ANY FALSE OR MISLEADING STATEMENTS.... 3

        A.  General Statements About Customer Relationships Are Not Actionable ................... 3

        B.  There Were No Misleading Statements Regarding Sobeys Before the Spinoff .......... 4

        C.  The Risk Disclosures Were Not Misleading .................................................................. 5

        D.  The Statements Relating to Issuance of Air Miles Were Not Misleading ................... 7

        E.  Statements Outside the Class Period Are Not Actionable ........................................... 8

        F.  The ADS Defendants Are Not Responsible for the Registration Statement ............... 9

    II.  PLAINTIFF FAILS TO RAISE A COMPELLING INFERENCE OF SCIENTER........ 11

        A.  Neither the Horn Declaration nor the Adversary Complaint Supports
            a Compelling Inference of Scienter ............................................................................ 12

        B.  The More Compelling Inference Is That Defendants Had No Intent To Defraud ...... 14

    III. PLAINTIFF FAILS TO STATE A CLAIM FOR SCHEME LIABILITY ...................... 16

    IV. PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ................................................... 17

    V.  PLAINTIFF'S CONTROL-PERSON CLAIM FAILS .................................................... 19

    VI. CONCLUSION ............................................................................................................. 19

## **TABLE OF AUTHORITIES**

### CASES

PAGE(S)

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011) ................................................. 15

*In re BofI Holding, Inc. Sec. Litig.*,
    977 F.3d 781 (9th Cir. 2020) ............................................................. 13

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
    403 F. Supp. 3d 712 (D. Minn. 2019) ................................................ 4

*Chamberlain v. Reddy Ice Holdings, Inc.*,
    757 F. Supp. 2d 683 (E.D. Mich. 2010) ............................................ 13

*In re Clearly Canadian Sec. Litig.*,
    875 F. Supp. 1410 (N.D. Cal. 1995) .................................................. 8

*In re Firstenergy Corp.*,
    2022 WL 681320 (S.D. Ohio Mar. 7, 2022) ...................................... 16

*Franchi v. SmileDirectClub, Inc.*,
    633 F. Supp. 3d 1046 (M.D. Tenn. 2022) .......................................... 7

*In re Garrett Motion Inc. Sec. Litig.*,
    2022 WL 976269 (S.D.N.Y. Mar. 31, 2022) ................................. 9, 17

*Heritage Glob. Network L.A., Inc. v. Welch*,
    2024 WL 695772 (M.D. Tenn. Feb. 20, 2024) ................................. 11

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ..................................... 5

*In re Huffy Corp. Sec. Litig.*,
    577 F. Supp. 2d 968 (S.D. Ohio 2008) ....................................... 13, 15

*Hutchins v. NBTY, Inc.*,
    2012 WL 1078823 (E.D.N.Y. Mar. 30, 2012) ................................. 5

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) .................................................................... 9-11

*Lattanzio v. Deloitte & Touche LLP*,
    476 F.3d 147 (2d Cir. 2007) .............................................................. 9

*In re Lions Gate Entm't Corp. Sec. Litig.*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016) ................................................... 8

*Maiman v. Talbott*,
2010 WL 11421950 (C.D. Cal. Aug. 9, 2010) ....................................................... 16

*Malin v. XL Cap. Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) .................... 15

*In re Merrill Lynch Auction Rate Sec. Litig.*,
851 F. Supp. 2d 512 (S.D.N.Y. 2012), *aff'd sub nom. La. Pac. Corp. v. Merrill Lynch & Co.*, 571 F. App'x 8 (2d Cir. 2014).............................................. 17

*N. Port Firefighters' Pension--Loc. Option Plan v. Temple-Inland, Inc.*,
936 F. Supp. 2d 722 (N.D. Tex. 2013) ............................................................. 9, 10

*In re Nash Finch Co. Sec. Litig.*,
502 F. Supp. 2d 861 (D. Minn. 2007) ............................................................... 4

*New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*,
336 F.3d 495 (6th Cir. 2003), *holding modified by Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) ............................................................................. 15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ..................................................................... 12

*Shah v. Zimmer Biomet Holdings, Inc.*,
348 F. Supp. 3d 821 (N.D. Ind. 2018) ............................................................. 13

*Tarapara v. K12 Inc.*,
2017 WL 3727112 (N.D. Cal. Aug. 30, 2017) ....................................................... 5

*In re Upstart Holdings, Inc. Sec. Litig.*,
2023 WL 6379810 (S.D. Ohio Sept. 29, 2023) ..................................................... 16

*Verble v. Morgan Stanley Smith Barney, LLC*,
148 F. Supp. 3d 644 (E.D. Tenn. 2015), *aff'd*, 676 F. App'x 421 (6th Cir. 2017) .................. 3

*Wallace v. IntraLinks*,
2013 WL 1907685 (S.D.N.Y. May 8, 2013) ......................................................... 5

*Wang v. Cloopen Grp. Holding Ltd.*,
661 F. Supp. 3d 208 (S.D.N.Y. 2023) ............................................................. 4, 7

*Wash. State Inv. Bd. v. Odebrecht S.A.*,
461 F. Supp. 3d 46 (S.D.N.Y. 2020) ............................................................... 4

*Weiner v. Tivity Health, Inc.*,
365 F. Supp. 3d 900 (M.D. Tenn. 2019).............................................................. 7

*Zwick Partners, LP v. Quorum Health Corp.*,
2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018) ................................................... 9-11

iv

STATUTES & RULES

Sec. 10(b) of the Exchange Act ......................................................................... 8

Sec. 11 of the Securities Act ............................................................................. 9

OTHER AUTHORITIES

SEC, "Form 4, Statement of Changes of Beneficial Ownership of Securities: General
    Instructions" *https://www.sec.gov/about/forms/form4data.pdf* (last visited Sept. 16, 2024)....16

## PRELIMINARY STATEMENT

As the ADS Defendants have shown, the complaint does not plead any fraud—merely that Loyalty Ventures sustained setbacks after its November 2021 Spinoff from ADS. The risks of such setbacks were all disclosed prior to the Spinoff. Loyalty Ventures' performance after the Spinoff provides no basis for claims against the ADS Defendants. There is no allegation that revenue or P&L information shared with investors was false. The complaint fails to allege fraud with the particularity required to plead securities fraud and should accordingly be dismissed.[1]

Plaintiff asserts that various pre-Spinoff disclosures were misleading because Loyalty Ventures did not disclose that Sobeys, a significant sponsor, had threatened to exit the Air Miles Program. But the complaint makes clear that Sobeys continued as a sponsor for months after the Spinoff and did not terminate its contract until June 2022. As a matter of law, the ADS Defendants had no obligation as of the November 2021 Spinoff to publicly disclose its confidential business discussions with Sobeys—*i.e.*, to negotiate in public. Plaintiff's conclusory assertion that Sobeys' exit was "inevitable" as of November 2021 is unsupported by any specific factual allegations. The complaint fails to plead that the ADS Defendants lied to investors about its relations with Sobeys.

Plaintiff likewise fails to rebut the showing by the ADS Defendants that the complaint alleges no false statement regarding other customers' participation in the Air Miles Program. The complaint does not show that the alleged loss of certain other sponsors before the Spinoff materially affected Loyalty Ventures or was required to be disclosed. Nor were the ADS Defendants required to publicly discuss the status of Loyalty Ventures' contracts with them.

---

[1] This reply uses the defined terms in the brief of Defendants Alliance Data Systems Corporation (n/k/a Bread Financial Holdings, Inc.) and Ralph J. Andretta (the "Motion" or "Mot."), ECF No. 37. Plaintiff's opposition brief, ECF No. 44, is referred to as the "Opposition" or "Opp." Unless otherwise indicated, emphasis has been added to quotations, and internal quotations, brackets, ellipsis, citations and footnotes have been omitted.

Further, there was no misrepresentation or even possibility of deception, because the status of these Loyalty Ventures customers had been reported on publicly prior to the Spinoff. And as previously shown, ADS and Loyalty Ventures executives—including Defendants Horn and Chesnut—personally invested in Loyalty Ventures immediately after the Spinoff. Their stock purchases negate any inference of scienter.

Plaintiff's claims also fail because, as the ADS Defendants have shown, they have no liability for statements made before the purported class period, and further, because the ADS Defendants did not make any of Loyalty Ventures' statements in its Registration Statement (or have any responsibility for any of its statements after the Spinoff). Nor can Plaintiff claim fraud based on the ADS Defendants' alleged omissions in confidential statements made to sophisticated third parties, because the ADS Defendants owed no duty of disclosure to those third parties, and Plaintiff does not allege that it relied on those confidential communications.

Plaintiff's Opposition fails to rebut the ADS Defendants' showing that the complaint does not plead loss causation. Nor has Plaintiff plausibly alleged that drops in Loyalty Ventures' stock price resulted from any correction to Loyalty Ventures' pre-Spinoff disclosures, as opposed to other information regarding its post-Spinoff performance.

Finally, the control-person claims fail for lack of any primary securities-fraud violation or allegations of exercise of control by Mr. Andretta.

## ARGUMENT

## I.    PLAINTIFF DOES NOT PLEAD ANY FALSE OR MISLEADING STATEMENTS

### A.  General Statements About Customer Relationships Are Not Actionable

The ADS Defendants have demonstrated that the allegedly misleading statements about customer relationships are non-actionable statements of puffery, historical fact or opinion.  Mot., ECF No. 37 at PageID 707-10.  Plaintiff's Opposition fails to rebut this showing.[2]

Plaintiff argues that "Defendants' representations were present tense statements regarding Loyalty [Ventures'] existing relationships with its top ten Sponsors" (Opp., ECF No. 44 at PageID 1455), but Plaintiff fails to show how these present-tense statements were false.  Sobeys was a sponsor, and Loyalty Ventures made no representations about the status of its negotiations with its sponsors or expected renewals or exits from the Air Miles Program.  Mot., ECF No. 37 at PageID 713-15.  The disclosures describe Loyalty Ventures' "[d]eep, long-term relationships" with clients and sponsors as a "competitive strength" and discuss the Air Miles Program's approximately 135 sponsors.  SAC, ECF No. 30 at Page ID 338-39.  These statements were not misleading.  Indeed, the market understood that "[a]dding and removing partners is part of the life of rewards programs."  ECF No. 38-10 at PageID 1279.

Sobeys did not exercise its termination rights prior to the Spinoff, and Plaintiff does not allege that any of the pre-Spinoff departures of Rexall, Rona or LCBO had any material impact on Loyalty Ventures' overall business.  As a result, Plaintiff fails to show how any pre-Spinoff statement regarding the company's customer relations was misleading.  None of the cases

---

[2] Plaintiff does not dispute that the alleged statements of opinion are non-actionable and, therefore, its claims related to such statements fail as a matter of law.  *Verble v. Morgan Stanley Smith Barney, LLC*, 148 F. Supp. 3d 644, 650 (E.D. Tenn. 2015) ("It is well established in the Sixth Circuit that failure to respond to an argument made in support of a Rule 12(b)(6) motion to dismiss a claim results in a forfeiture of the claim."), *aff'd*, 676 F. App'x 421 (6th Cir. 2017).

Plaintiff cites in the Opposition suggests that the ADS Defendants' alleged statements about their customer relations or financial metrics are actionable.[3]

### B.  There Were No Misleading Statements Regarding Sobeys Before the Spinoff

As explained in the Motion, the identification of Sobeys as a sponsor, and other general statements about the Air Miles Program, were not misleading.  Mot., ECF No. 37 at PageID 711-13.  Plaintiff alleges that Sobeys was seeking to renegotiate its contract in 2021.  SAC, ECF No. 30 at PageID 329-30.  Plaintiff asserts that Sobeys never "retracted" its alleged "*inten[t]*" to terminate, but Plaintiff cites no authority that would have required the ADS Defendants to disclose that supposed "intent" prior to the Spinoff—especially given that no notice of termination was issued, but instead a re-negotiated set of terms.  SAC, ECF No. 30 at PageID 331; Opp., ECF No. 44 at PageID 1461-62.  The Horn Declaration says nothing different.  It states that Sobeys was "***considering*** exercising its early termination rights" in 2021.  SAC, ECF No. 30 at PageID 327.  Plaintiff asserts that Sobeys' departure was "inevitable and preordained" (SAC, ECF No. 30 at PageID 330), but these are just conclusory assertions, unsupported by any factual allegations.

As the ADS Defendants have shown, issuers of securities are not required to disclose the status of their customer relations—to negotiate with their customers in public.  Mot., ECF No. 37 at PageID 712-13.  The ADS Defendants made no statements about their negotiations with

---

[3] *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 227 (S.D.N.Y. 2023) (finding allegations for misstatements relating to customer base and retention rate sufficient where there was a "dramatic . . . decline in that rate" known prior to the disclosure); *In re CenturyLink Sales Pracs. & Sec. Litig.*, 403 F. Supp. 3d 712, 725 (D. Minn. 2019) (finding allegations that statements regarding customer relationship and loyalty sufficient in light of "widespread, systematic" use of a "deceptive sales tactics"); *In re Nash Finch Co.*, 502 F. Supp. 2d 861, 880 (D. Minn. 2007) (finding allegations regarding materiality of lost customers sufficient where a "myriad [of] problems," including "lost customers, discontinuation of advertising billing practices, discontinuation of diversion buying, and the failure of network rationalization," "combined to cause Defendants' positive statements to be false and misleading"); *Wash. State Inv. Bd. v. Odebrecht S.A.*, 461 F. Supp. 3d 46, 74 (S.D.N.Y. 2020) ("alleged misstatements regarding Defendants' 'competitive bidding' are actionable" where "advantages conferred by . . . bribery scheme" were undisclosed).

Sobeys.  The disclosures accurately stated that Sobeys was a sponsor, and they truthfully described the nature of sponsor relationships historically.  They warned of concentration risk and the possibility of exits from the program.  Mot., ECF No. 37 at PageID 701-02.  There was nothing misleading about these statements.  Nor has Plaintiff identified any obligation to make public disclosures about its private contract negotiations in progress.  And, in this instance, those negotiations first resulted in amended contract terms, not termination.  Mot., ECF No. 37 at PageID 711-13.

In the cases Plaintiff cites, the customer's exit was definitive—unlike Sobeys' expressed "consideration" about its commitment to the Air Miles Program.  *See Wallace v. IntraLinks*, 2013 WL 1907685, at *7 (S.D.N.Y. May 8, 2013) (customer informed the company that it would not renew its contract and took steps to find a replacement, such that its departure was "impending" at the time);  *Tarapara v. K12 Inc.*, 2017 WL 3727112, at *15 (N.D. Cal. Aug. 30, 2017) (customer's board sent an actual "non-renewal notice" and "investors were led to believe that the . . . contract would automatically renew upon [its] expiration"); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 WL 6233561, at *15 (S.D.N.Y. Dec. 2, 2013) (a major customer had repudiated its contract, which led the Court to conclude that the customer "had definitively stated that it no longer intended to do business with [the company]"); *Hutchins v. NBTY, Inc.*, 2012 WL 1078823, at *5-6 (E.D.N.Y. Mar. 30, 2012) (defendants knew that customer had already changed its contract process to a "competitive bidding initiative," which would necessarily "result[]" in an "adverse impact" on "sales, pricing and future prospects").

### C.  The Risk Disclosures Were Not Misleading

As the ADS Defendants have shown, there were ample warnings in the Registration Statement of potential reductions in **Loyalty Ventures' combined revenue** resulting from a

***Loyalty Ventures'*** top ten client departure. Mot., ECF No. 37 at PageID at 710-11. Faced with these clear warnings, Plaintiff vainly attempts to criticize them (Opp., ECF No. 44 at PageID 1465-1469), but their objections lack substance.

Loyalty Ventures warned investors that a loss of one of its "10 largest clients" (which includes not only Air Miles Program sponsors but also BrandLoyalty customers) "***could*** cause a significant reduction in [Loyalty Ventures'] combined revenue." ECF No. 38-2 at PageID 770.[4] Plaintiff asserts that Defendants knew that a "loss of any" of "AIR MILES' ten largest Sponsors" "***would*** be catastrophic." Opp., ECF No. 44 at PageID 1454. But the risk warning expressly cited the risk of "significant reduction" in Loyalty Ventures' combined revenue, and Plaintiff does not allege that a top ten customer of Loyalty Ventures departed the company, much less any "significant" reduction in Loyalty Ventures' combined revenue as a result of such a departure, when the Registration Statement was filed.

The Registration Statements also warned that "a failure to maintain or renew relationships with our sponsors and suppliers could negatively affect our [*i.e.*, Loyalty Ventures'] revenues and profitability"; "may [] impact[]" "the value proposition . . . [of] the AIR MILES Reward Program coalition and demand for BrandLoyalty's . . . loyalty programs"; and "could have a material adverse effect on our [*i.e.*, Loyalty Ventures'] business, results of operations, financial condition and liquidity." ECF No. 38-2 at PageID 771; SAC, ECF No. 30 at PageID 340-41. Plaintiff alleges no facts showing that any of these risks had materialized when the warnings were made.

---

[4] Plaintiff does not allege that relevant Air Miles Program sponsors were among Loyalty Ventures' ten largest clients but mistakenly conflates "top ten sponsors" in the Air Miles Program with Loyalty Ventures' ten largest clients.

Plaintiff alleges that Rexall, LCBO and Rona "amounted to approximately 10% of the Sponsor revenue" in 2020 and 2021 but mistakenly asserts in the Opposition that these sponsors "constituted 10% of *Loyalty's* revenue." *Compare* SAC, ECF No. 30 at PageID 324 *with* Opp., ECF No. 44 at PageID 1466.  This statement confuses one business segment with the entire business.  By way of example, for 2020, the BrandLoyalty segment accounted for $487.7 million of revenue, whereas the Air Miles Program contributed $277.1 million.  ECF No. 38-2 at PageID 823.  Plaintiff makes no allegations that the pre-Spinoff departures of LCBO, Rona and Rexall caused a "significant" reduction in Loyalty Ventures' revenue.

None of the cases Plaintiff cites to in its Opposition supports its effort to re-write the risk disclosures in order to assert fraud claims.  In *Weiner v. Tivity Health, Inc.*, the defendant warned of risks that its customers could begin operating competing programs but failed to disclose the known risk that one of its key customers had already started such an in-house program.  365 F. Supp. 3d 900, 904-905 (M.D. Tenn. 2019).  *See also Franchi v. SmileDirectClub, Inc.*, 633 F. Supp. 3d 1046, 1058, 1076 (M.D. Tenn. 2022) (finding of plausible allegations that risk warnings relating to regulatory and legal challenges were misleading where company "selectively disclos[ed] particular regulatory and legislative risks while failing to disclose others"); *Wang v. Cloopen Grp. Holding Ltd*, 661 F. Supp. 3d 208, 228 (S.D.N.Y. 2023) (finding of plausible allegations that warnings relating to customer retention were misleading where defendant had already suffered a decline in customer retention).  Plaintiff does not allege anything comparable here.

### D.  The Statements Relating to Issuance of Air Miles Were Not Misleading

As the ADS Defendants established in the Motion, Plaintiff has not plausibly alleged that the ADS Defendants made any misleading statements about the decline in the issuance of Air Miles for Q3 2021.  Mot., ECF No. 37 at PageID 714-15.  Plaintiff cites no facts to support its

assertion that the decreases in Q3 2021 were not due to a decrease in promotional activity, as the company described.  Opp., ECF No. 44 at PageID 1469-70.

### E.  Statements Outside the Class Period Are Not Actionable

Courts nationwide, including in this Circuit, have correctly held that alleged statements made prior to the class period—*i.e.*, all statements prior to the Spinoff—are not actionable as a matter of law.  Mot., ECF No. 37 at PageID 715-17.  In its Opposition, Plaintiff cites instances where a court concluded that pre-class period statements are actionable (Opp., ECF No. 44 at PageID 1470-74), but we respectfully submit that these cases were wrongly decided, as evidenced by persuasive district court rulings and contrary decisions from the Second Circuit.

Fraud claims under Section 10(b) must rely on statements made during the class period, because the "class period defines the time during which defendants' fraud was allegedly alive in the market." *In re Clearly Canadian Sec. Litig.*, 875 F. Supp. 1410, 1420 (N.D. Cal. 1995). Even where, as here, a defendant allegedly made a known false statement prior to the class period, "[a]ny other rule would undercut the meaning of the Class Period and eviscerate the statute of limitations." *In re Lions Gate Entm't. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 17 (S.D.N.Y. 2016) ("It could always be argued that allegedly false statements made long before the Class Period and outside the statute of limitations should be corrected by a statement within the Class Period.").  A statement made outside the class period cannot, as a matter of law, support a claim that an investor was somehow "defrauded" during the class period.

Investors who purchased during the class period have ample protections.  Any alleged false statement in the Registration Statement is covered under Section 11 of the Securities Act. *See In re Garrett Motion Inc. Sec. Litig.*, 2022 WL 976269, at *16 (S.D.N.Y. Mar. 31, 2022). Issuers may be required to correct pre-class period statements that are reaffirmed during the class

8

period.  *See Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007).  But Plaintiff cannot claim fraud based on statements made before the class period.  Opp., ECF No. 44 at PageID 1471.[5]

Finally, it makes no difference that Loyalty Ventures' common stock did not trade prior to the class period.  As the ADS Defendants have shown, pre-class period statements have been held to be not actionable where, as here, the relevant security was not publicly traded as of the time of the alleged statements.  *In re Garrett*, 2022 WL 976269, at *15-16; *N. Port Firefighters' Pension--Loc. Option Plan v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 744 (N.D. Tex. 2013).  To conclude that pre-class period statements are actionable would "circumvent the general rule" holding that such statements are not actionable.  *In re Garrett*, 2022 WL 976269, at *16.

### F.  The ADS Defendants Are Not Responsible for the Registration Statement

The Supreme Court has made clear in *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011) that only "makers" of false statements are subject to liability under the securities laws, and the ADS Defendants were not "makers" of anything in the Registration Statement.  Mot., ECF No. 37 at PageID 717-19.  Plaintiff asserts that ADS controlled the contents of Loyalty Ventures' Registration Statement merely because it was Loyalty Ventures' parent at the time.  Opp., ECF No. 44 at PageID 1474-76.  But it is well-established that ADS's ownership of Loyalty Ventures does not render the ADS Defendants "makers" of Loyalty Ventures' Registration Statement.  *Janus*, 564 U.S. at 145-46.  Further, the mere fact of

---

[5] The ADS Defendants had no duty to correct during the class period because such a duty can arise only when new information is learned, and there are no such allegations here.  Mot., ECF No. 37 at PageID 716-17.  The sole case on which Plaintiff relies to assert that the ADS Defendants had a duty to correct acknowledges that a duty to correct arises only where the maker "*later* discovers that the statement was untrue or misleading." *Zwick Partners, LP v. Quorum Health Corp.*, 2018 WL 2933406, at *7 (M.D. Tenn. Apr. 19, 2018).  Plaintiff does not allege that the ADS Defendants "later discover[ed]" new facts after the challenged disclosures.

"participat[ing] in the preparation and filing" of the Registration Statement (Opp., ECF No. 44 at PageID 1475-76) is not enough. *See Janus*, 564 U.S. at 145-46.

Plaintiff alleges merely that Mr. Andretta signed a letter that accompanied Loyalty Ventures' Registration Statement. Opp., ECF No. 44 at PageID 1474-75. But transmitting a cover letter does not cause its signatory to have "made" the contents of the registration statement. *N. Port Firefighters' Pension*, 936 F. Supp. 2d at 742-43. Plaintiff also argues that ADS is a "maker" because it purportedly "furnished" the Information Statement. Opp. ECF No. 44 at PageID 1474-76. Even so, ADS would not be a "maker" of the Registration Statement. *See N. Port Firefighters' Pension*, 936 F. Supp. 2d at 743 ("[T]he forwarding of these materials to [the SpinCo's] shareholders [does not] transform[] [the RemainCo] into a 'maker' of the Information Statement under federal securities law."). Indeed, the Information Statement is clear on the face who the maker is, describing that "'We,' 'us,' 'our,' 'Company,' 'Loyalty Ventures Inc.' and 'Loyalty Ventures,' unless the context otherwise requires, refer to Loyalty Ventures." ECF No. 38-2 at PageID 743. Plaintiff does not allege any role by the ADS Defendants beyond at most mere "participation," and participation is insufficient under *Janus* to make the ADS Defendants liable for the Registration Statement.

Plaintiff argues that *Zwick Partners, LP v. Quorum Health Corp.* suggests that a parent company is necessarily the maker of statements made in the registration statement of a spinoff company. 2018 WL 2933406, at *7 (M.D. Tenn. Apr. 19, 2018); Opp., ECF No. 44 at PageID 1475. But that is not the holding of *Zwick*. Rather, in *Zwick*, the court considered whether specific financials described in a subsidiary's registration statement were false or misleading and found that the plaintiff there had sufficiently alleged claims against the then-parent because "the financials in these representations came from [the parent]" where, "prior to the spin-off, [the

10

parent and subsidiary] filed consolidated financial statements with the SEC." 2018 WL 2933406, at *1, *3-4. The reasoning of *Zwick* is inapplicable because the alleged misstatements here are not financials based on information from the parent and, moreover, the financials for ADS's business segments, including the LoyaltyOne business segment that was spun-off as Loyalty Ventures, were separately reported prior to the Spinoff. *See, e.g.*, ECF No. 38-12 at PageID 1315.

Plaintiff's conclusory allegations are inadequate to suggest "ultimate control over the content of a statement," *Janus*, 564 U.S. at 143, as is evident from the authorities Plaintiff cites. *See* SAC, ECF No. 30 at PageID 306; *Heritage Glob. Network Los Angeles, Inc. v. Welch*, 2024 WL 695772, at *12 (M.D. Tenn. Feb. 20, 2024) (merely asserting that defendants "had authority over verbal and written statements" would be "improperly conclusory"). The claims against the ADS Defendants should accordingly be dismissed for this reason as well.

## II. PLAINTIFF FAILS TO RAISE A COMPELLING INFERENCE OF SCIENTER

As the ADS Defendants have shown, Plaintiff fails to allege the necessary strong inference of scienter. Mot., ECF No. 37 at PageID 719-20. Plaintiff asks this Court to infer that Defendants sought to defraud investors—including the individual Defendants themselves, some of whom invested personally in Loyalty Ventures' stock during the alleged class period. Plaintiff's theory of fraud is far less plausible than the alternative, non-fraudulent notion that the Defendants believed at the time of the Spinoff that Loyalty Ventures would succeed as a separate enterprise, and that its Registration Statement appropriately disclosed the prospects and risks of its business.

### A. Neither the Horn Declaration nor the Adversary Complaint Supports a Compelling Inference of Scienter

The Horn Declaration does not support a compelling inference of scienter, because it contains no information that is inconsistent with Loyalty Ventures' disclosures prior to the Spinoff. Indeed, the Horn Declaration makes clear that, prior to the Spinoff, in late 2020, Sobeys was merely "*considering*" early termination and did not exercise its right to exit the Air Miles Program until June 2022—seven months after the Spinoff. SAC, ECF No. 30 at PageID 327. Nor does the Horn Declaration indicate that Loyalty Ventures' loss of any sponsors of the Air Miles Program, whether "major" or not, had materially affected Loyalty Ventures' overall business prior to the Spinoff. Nothing in the Horn Declaration contradicts any pre-Spinoff statements about Loyalty Ventures' business, which included full disclosures of the risks it faced as a result of customer concentration or sponsors' potential to pivot to in-house loyalty programs. SAC, ECF No. 30 at PageID 350; ECF No. 38-2 at PageID 837. Horn does not state that he or anyone acted with the intention of deceiving investors in Loyalty Ventures and, as noted, Horn himself invested in Loyalty Ventures following the Spinoff. *See* Mot., ECF No. 37 at PageID 703.

The Adversary Complaint likewise contains no information that supports a compelling inference of scienter. As an initial matter, it is well-recognized that "allegations based on the mere filing of other lawsuits generally will not provide much in the way of plausible corroboration of a plaintiff's fraud" and that allegations in another lawsuit are appropriately accorded "limited corroborative weight." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011). Plaintiff cannot satisfy its obligation to plead fraud with particularity by merely cribbing conclusory allegations from another complaint, including by citing documents that Plaintiff does not even purport to possess or to have seen. In the cases on which Plaintiff relies, the claimants who relied on allegations in third-party

12

complaints all cited allegations by others based on personal, first-hand knowledge.[6]  Here, by contrast, Plaintiff does not allege that the Trustee's allegations are based on any personal, first-hand knowledge—only documents produced by ADS to the Trustee that the Plaintiff here does not even claim to have seen.

In any event, Plaintiff's arguments based on the Adversary Complaint do not support an inference of scienter.  Plaintiff identifies no information about Sobeys or other sponsors in the Air Miles Program that is inconsistent with Loyalty Ventures' public statements prior to the Spinoff.  The Adversary Complaint alleges that Sobeys expressed an intent in early 2021 to depart the Air Miles Program within two years but did not exercise its early termination rights and instead negotiated more favorable terms in March 2021.  SAC, ECF No. 30 at PageID 328-30.  As alleged by the Trustee, Sobeys did not "announce[] that it would discontinue its participation in the [Air Miles Program]" until "eight months [after the Spinoff] on June 7, 2022."  SAC, ECF No. 30 at PageID 331.[7]

---

[6] *See In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d 968, 980 (S.D. Ohio 2008) ("The Plaintiffs stress that they are not requesting that the Court take judicial notice of the truth of the allegations in the Trustee's complaint . . . rather, they request that the Court take such notice of the fact that those allegations have been set forth therein and that those allegations were made by an individual who has had custody of [defendant's] internal books and records for two years."); *Shah v. Zimmer Biomet Holdings, Inc.*, 348 F. Supp. 3d 821, 835 (N.D. Ind. 2018) (third-party wrongful termination complaints brought by former employees); *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 793 (9th Cir. 2020) (finding allegations of loss causation plausible where alleged corrective disclosure was a complaint filed by "a former insider of the company who had personal knowledge of the facts he alleged"); *Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 714 (E.D. Mich. 2010) (third-party complaint "alleging first hand knowledge, based upon a conversation with a top executive").

[7] None of the *Helwig* factors applies to the ADS Defendants.  As discussed above, (i) there are no allegations of insider selling and (ii) there is no divergence between internal reports, as described in the Horn Declaration and the Adversary Complaint, and the company's public statements.  Additionally, and among other reasons: (iii) there is a seven-month interval between any statements allegedly attributable to the ADS Defendants and the June 2022 disclosure of Sobeys' departure; (iv) there are no allegations of bribery, notwithstanding that Plaintiff calls alleged vague "threats" made against Defendants Horn and Chesnut "bribes"; (v) there has not been any "quick" settlement of ancillary claims in other litigation; (vi) no information from early 2021 was inconsistent with the disclosures made months later, and there are no allegations of any intervening new information; (vii) there are no allegations relating to accounting information; (viii) there are no allegations of undisclosed stock sales by interested directors; and (ix) there are no allegations that Mr. Andretta was motivated by a desire to save his salary or job.

**B.  The More Compelling Inference Is That Defendants Had No Intent To Defraud**

As the ADS Defendants have shown, Plaintiff's allegations fail to raise a strong inference of scienter.  It is implausible to think that ADS and Loyalty Ventures' insiders—including, especially, Defendants Horn and Chesnut—knew, prior to the Spinoff, that Loyalty Ventures was certain to fail because of Sobeys' inevitable departure but nonetheless personally invested or retained a significant interest in Loyalty Ventures.  Mot., ECF No. 37 at PageID 719-20.

ADS retained a 19% equity stake in Loyalty Ventures after the Spinoff, and continued to hold that investment, including after Loyalty Ventures filed for bankruptcy.  SAC, ECF No. 30 at PageID 309-10.  Plaintiff alleges, in apparent contradiction to the its theory of fraud, that ADS intended to sell off its interests in Loyalty Ventures within one year of the Spinoff, yet somehow failed to take advantage of its alleged inside knowledge of Loyalty Ventures' supposed misrepresentations and doomed future.  SAC, ECF No. 30 at PageID 360.  Plaintiff posits that ADS knew that Sobeys would end its relationship with Loyalty Ventures during the summer of 2022, but inexplicably retained its equity stake instead of selling it, as Plaintiff concedes ADS always intended to do.  SAC, ECF No. 30 at PageID 360.  Plaintiff offers no explanation for this failure on the part of ADS to capitalize on its supposed fraud.  The far more plausible inference is that ADS retained its equity stake because it believed that Loyalty Ventures was well positioned to succeed, and that unanticipated adverse business developments—not a fraudulently concealed loss of sponsors—led to its eventual failure.

The personal investments of ADS and Loyalty Ventures insiders similarly makes plain that there is no reason to suspect fraud and, to the contrary, good reason to think that Defendants fully believed that the Registration Statement fairly and accurately described Loyalty Ventures' business and prospects.  Plaintiff asks this Court to ignore the personal investments of Mr. Ballou (ADS's chair and Loyalty Ventures' chair post-Spinoff), Mr. Horn and Mr. Chesnut,

14

(Opp., ECF No. 44 at PageID 1483)—but it is entirely appropriate for this Court to consider their stock purchases as reflected in the Form 4*s* cited in support of the ADS Defendants' motion.  As courts have recognized, such Form 4*s* "are required SEC disclosures and may be considered for the truth of their contents." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 583 (S.D.N.Y. 2011).[8]

Plaintiff attempts to minimize these individuals' substantial personal investments as "*de minimis*," but the amounts involved are far from trivial (approximately $475,000, $165,000 and $50,000, respectively).  Nor does Plaintiff supply any reasonable grounds that would support the implausible notion that individuals who allegedly knew about, and concealed, supposedly adverse customer developments with negative implications for Loyalty Ventures would make significant personal investments in its stock after the Spinoff.  Plaintiff points to cases that consider the possibility of mandatory exercises of stock options that could be viewed as not necessarily indicating confidence in a company's future prospects.  *See In re Upstart Holdings, Inc. Sec. Litig.*, 2023 WL 6379810, at *20 (S.D. Ohio Sept. 29, 2023); *Maiman v. Talbott*, 2010 WL 11421950, at *7 (C.D. Cal. Aug. 9, 2010).  Here, the transactions were all open-market stock purchases, not exercises of options, and show that none of these well-placed insiders thought that

---

[8] *See also Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 133 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ("SEC Forms 3, 4 and 5, which are required to be filed with the SEC under penalty of perjury, are used by officers of public corporations to publicly disclose their transactions in company stock. These documents are routinely accepted by courts on motions to dismiss securities fraud complaints and are considered for the truth of their contents."); *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003), *holding modified by Merck & Co. v. Reynolds*, 559 U.S. 633, 130 (2010) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice."); *In re Huffy Corp. Sec. Litig.*, 577 F. Supp. 2d at 979 ("It is also appropriate for the Court to consider other of [defendant's] securities filings which Defendants have attached to their motion, even though Plaintiffs did not refer to those filings in their Amended Complaint, because those filings are public records. The Plaintiffs contend that the Defendants committed securities fraud, in part, as a result allegedly false statements in some of [defendant's] public securities filings.  Those allegations render other such filings integral to the Plaintiffs' claims.").

the Registration Statement concealed negative information that would eventually damage Loyalty Ventures' business and stock price.[9]

## III.    PLAINTIFF FAILS TO STATE A CLAIM FOR SCHEME LIABILITY

The ADS Defendants have shown that Plaintiff's theory of "scheme" liability based on matters other than Defendants' alleged public misstatements fail as a matter of law, because Plaintiff does not allege any reliance on such actions, and cannot claim any presumption of reliance, for purported omissions in private representations to third parties.  ECF No. 37 at PageID 720-22.  Plaintiff alleges that Defendants "concealed" information from third-party ratings agencies, advisors and lenders, but does not dispute that Defendants owed no duty of disclosure to these third parties, and Plaintiff does not allege that it personally relied on Defendants' confidential communications with these third parties.  Plaintiff cannot sustain its claim for scheme liability based on these facts.  Nor does *In re Firstenergy Corp.*, 2022 WL 681320 (S.D. Ohio Mar. 7, 2022) save Plaintiff's position.  There, the "[c]omplaint allege[d] that [defendant's] own officers committed fraudulent acts that created misleading information" and "[t]hat information was publicized by the Company and factored efficiently into share prices." *Id.* at *28.  Here, there are no allegations that omissions to third parties were publicized by the Defendants or somehow factored efficiently into Loyalty Ventures' share price.  Additionally, Plaintiff "do[es] not adequately allege that [Defendants] committed manipulative and deceptive acts because the market is not misled when a transaction's terms are fully disclosed" and here, like in *In re Garrett*, "the spin-off's terms were fully disclosed." 2022 WL 976269, at *17.

---

[9] The Form 4*s* disclose the type of transactions and none of the relevant transactions here are exercises of options.  *Compare* Table I, Box 3 for each of ECF Nos. 38-6, 38-7 and 38-8 (identifying "P" as the transaction code) with SEC, "Form 4, Statement of Changes of Beneficial Ownership of Securities: General Instructions," *https://www.sec.gov/about/forms/form4data.pdf* (last visited Sept. 16, 2024) at 7 (defining "P" as an "[o]pen market or private purchase of non-derivative or derivative security" and defining "M" as "[e]xercise or conversion of derivative security exempted pursuant to Rule 16b-3").

## IV.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

As Defendants have shown, Plaintiff has not pled the essential element of loss causation in respect to the alleged corrective disclosures.  Mot., ECF No. 37 at 722-24.

Plaintiff does not dispute that the Complaint alleges no corrective disclosures with respect to Staples or Rexall or otherwise plead loss causation in respect to their departures from the Air Miles Program.  Plaintiff's alleged omissions with regard to Staples or Rexall accordingly fail as a matter of law.

With respect to the departures of Rona and LCBO, Plaintiff's claims fail because their departures were already publicly known as of the time of the Spinoff.  The complaint expressly alleges that "in 2020 and 2021, media reports circulated that Rexall, LCBO and RONA had terminated their participation in the AIR MILES program."  SAC, ECF No. 30 at PageID 358. Having expressly referenced these media reports in the complaint, Plaintiff cannot simply ignore them in opposing Defendants' motion.[10]  It makes no difference that these reports did not specifically identify these entities as top ten customers, because the supposed corrective disclosures alleged by Plaintiffs make no mention of them as top ten sponsors, and the market was aware of their relative significance by virtue of the fact that their departures were noted by the business press, including a description of the departure of RONA/Lowe's Canada in one of these media reports as "a major withdrawal."  ECF No. 38-10 at PageID 1279.

---

[10] Even if these media reports had not been incorporated by reference into the complaint, it is well established that the Court may take judicial notice of news articles showing that allegedly omitted information existed in the market.  *See In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 526 n.4 (S.D.N.Y. 2012) (taking judicial notice of "news articles" submitted in connection with motions to dismiss "to the limited extent they are offered for the purpose of demonstrating the existence of information in the market and not for the truth of the matters asserted therein"), *aff'd sub nom. La. Pac. Corp. v. Merrill Lynch & Co.*, 571 F. App'x 8 (2d Cir. 2014).

The alleged corrective disclosure that Air Miles issuances had declined due to two sponsor departures did not correct any previously concealed information or cause any drop in Loyalty Ventures' stock price.  Rather, the identified press release reported ordinary course financial and operating setbacks, and Plaintiff fails to allege any reason to think that any decrease in the stock price resulted from anything other than these setbacks.  For example, Plaintiff cannot plausibly allege that a press release announcing a revenue *increase* for the Air Miles Program led to a stock price drop because Loyalty Ventures also disclosed exits from the Air Miles Program—particularly when the same press release announced a $50 million impairment for the BrandLoyalty business segment, among other negative developments for Loyalty Ventures.  ECF No 38-3 at PageID 950.  Indeed, Plaintiff concedes that revenue for the Air Miles Program "says nothing of the number of Miles issued," and Plaintiff does not plausibly allege that a decrease in the number of Air Miles issued resulted in a drop in stock price.  Opp., ECF No. 44 at PageID 1492.  Plaintiff's argument that this Court cannot consider this other negative news in evaluating whether the complaint plausibly pleads loss causation is simply wrong, because the ADS Defendants have merely directed the Court to the text of the very same press releases that Plaintiff asserts are corrective disclosures.  Plaintiff cites no authority that this Court must ignore the content of the very disclosures that Plaintiff identifies as the corrective disclosures that purportedly caused Plaintiff's losses.  *See* Opp., ECF No. 44 at PageID 1491-92.

With respect to the alleged June 2022 corrective disclosure relating to Sobeys, Plaintiff alleges that although "Sobeys' actual departure [was] in June 2022" (SAC, ECF No. 30 at PageID 351), Sobeys had threatened in 2020 to exit from the Air Miles program within two years.  But the disclosure in June 2022 that Sobeys had exercised its termination rights did not reveal any prior fraud, because Sobeys did not actually terminate its relationship until June 2022.

18

Any associated stock drop on the occasion of that event was caused by Sobeys' termination of its relationship, not a disclosure that its intentions in 2020 had been concealed.

## V.     PLAINTIFF'S CONTROL-PERSON CLAIM FAILS

Given that Plaintiff has not pled any underlying violation of the Exchange Act, the ADS Defendants cannot be subject to secondary liability as control persons.  Mot., ECF No. 37 at PageID 724-25.  Additionally, Plaintiff does not even argue in the Opposition that Mr. Andretta exercised any control over Loyalty Ventures' disclosures prior to (much less after) the Spinoff. Opp., ECF No. 44 at PageID 1494.  The control-person claims against Mr. Andretta accordingly fail as a matter of law.

## VI.    CONCLUSION

For the foregoing reasons, and those stated in Defendants' moving briefs, the ADS Defendants respectfully request that the Court dismiss Plaintiff's complaint with prejudice.

Dated: September 16, 2024

By: /s/ *Charles S. Duggan*
Charles S. Duggan (admitted *pro hac vice*)
Trial Attorney
Benjamin S. Kaminetzky (admitted *pro hac vice*)
Michael V. Pucci
Oliver A. Kaufman
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
charles.duggan@davispolk.com
ben.kaminetzky@davispolk.com
michael.pucci@davispolk.com
oliver.kaufman@davispolk.com

Daniel J. Guttman (0068034)
Douglas Vonderhaar (0087933)
Mathew Drocton (0093742)
BAKER & HOSTETLER LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
(614) 228-1541
dguttman@bakerlaw.com
dvonderhaar@bakerlaw.com
mdrocton@bakerlaw.com

*Counsel for Defendants Alliance Data Systems Corporation (n/k/a Bread Financial Holdings, Inc.) and Ralph J. Andretta*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed with the Court on September 16, 2024.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: September 16, 2024

By:     /s/ *Charles S. Duggan*
        Charles S. Duggan